IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAMEKA ESTELLE BENNETT, | ) | |
|     Movant, | ) | No. 3:15-CV-3534-K |
| vs. | ) | No. 3:10-CR-345-K(2) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|     Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Tameka Estelle Bennett's (Movant) motion to vacate, set-aside, or correct sentence pursuant 28 U.S.C. § 2255. For the following reasons, the Court denies the motion.

## I. BACKGROUND

Bennett was charged by second superseding indictment with conspiracy to obstruct justice through evidence concealment in violation of 18 U.S.C. § 1512(b)(2)(B), (k) (Count One); aiding and abetting obstruction of justice through evidence concealment in violation of 18 U.S.C. §§ 1512(b)(2)(B), (c)(1), and 2 (Count Two); obstruction of due administration of justice in violation of 18 U.S.C. § 1503(a) (Count Three); and felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (Count Five). (Doc. 50.) Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:10-CR-345-K(1). She pled not guilty, and a jury convicted her of all four of the counts against her. (Doc. 89.)

The United States Court of Appeals set out the following evidence and

proceedings in the appellate opinion:

> Around noon on October 29, 2010, Alicia Madrigal allowed two men in green vests posing as termite inspectors to enter her Dallas townhome. The men left without incident. Later that day, they broke into Madrigal's home. One of the men pointed a silver gun with a wooden handle at Madrigal while the other removed a small safe from her bedroom. The men loaded the safe into a silver Dodge Avenger and drove away.
>
> The resulting police investigation located a neighbor who had recorded the Avenger's license plate number. Police determined that Tameka Bennett had rented the car from Enterprise a few days earlier. Moses Coppin was listed as an additional driver in the rental agreement. The police staked out the local Enterprise rental center on the day the vehicle was to be returned and arrested Coppin when he attempted to return the vehicle. They found a fully-loaded handgun in Coppin's possession that matched Madrigal's description of the one used during the burglary. The police arrested Coppin. On his cell phone police discovered photographs of women wearing Madrigal's jewelry.
>
> Bennett was Coppin's girlfriend at the time of his arrest and had the stolen jewelry in her possession. The day after the arrest, Bennett, who owned a local body shop, told one of her employees, James Collins, that she had to recover Coppin's phone from the police "cause those stupid SOBs have the evidence on the phone and they don't know they have it." Later that day, Bennett visited the county jail and retrieved Coppin's phone from the property room. She then removed the phone's subscriber identity module ("SIM") card. Not long after Bennett left the jail with the cell phone, the lead detective on Coppin's case received a search warrant for the phone. The detective successfully tracked Bennett down and retrieved the phone from her possession. The phone no longer contained the SIM card, but Bennett had not removed the memory card.
>
> Bennett then reported the day's activities to Coppin, who remained incarcerated in Dallas County Jail, awaiting a detention hearing on an aggravated burglary charge. While they were speaking on the phone, they realized that the cell phone's memory card might also contain evidence. With Coppin on the phone, Bennett contacted Coppin's cell phone provider to ask if the phone's memory could be cleared remotely. She was told that could not be done. In another conversation, Coppin suggested

2

to Bennett that she find someone to claim ownership of the gun in order to avoid a felon-in-possession charge. Bennett, in turn, directly asked Collins to tell the police that the gun was his so that Coppin "wouldn't go to jail." Collins refused.

Not long after Coppin posted bond in state court, the Government filed a criminal complaint against him on November 16, 2010 for being a felon in possession of a weapon and arrested him the next day. On the day of Coppin's arrest, Bennett again approached Collins and suggested that admitting that the gun was his would be "worth a thousand dollars." Collins understood Bennett to be offering him $1,000 to claim that the gun was his. Collins again refused. The district court held a detention hearing on November 18, 2010 and found probable cause to support the criminal complaint. Coppin was detained in federal custody. He was subsequently indicted on the felon-in-possession charge.

While Coppin was being prosecuted for this charge, Bennett had been moving the stolen jewelry between various places in their Dallas home and her body shop in an effort to conceal it from the police. Bennett's daughter, Cabria, contacted the police and reported that Bennett had the stolen jewelry. Cabria secretly arranged with a police officer to leave the jewelry on the front porch of their Dallas home, which was then recovered by the police. Madrigal identified the jewelry as her own and Coppin as one of the burglars. The police then executed a search warrant on Bennett's home and found a loaded revolver under her mattress and two other guns hidden under the floorboards in her closet.

*United States v. Coppin*, 569 F. App'x 326, 329-30 (5th Cir. 2014).

The presentence report (PSR) used the 2011 United States Sentencing Guidelines (USSG). (Doc. 97-1 at 11, ¶ 32.) It grouped the obstruction offenses with the count for the underlying offense. (*Id*. at ¶¶ 33-34.) The cross-reference under USSG § 2K2.1(c)(1) stated that if the defendant used or possessed a firearm in connection with the commission of another offense, USSG § 2X1.1 should be applied to that other offense. (*Id*. at 12, ¶ 35.) Bennett possessed the firearm in connection with the

3

distribution of a controlled substance.  (*Id*.)  Under § 2X.1.1, the base offense level is the base offense level of the substantive offense, which was delivery of a controlled substance.  (*Id*. at ¶ 36).  That had a base offense level of 26, which was increased by two levels to 28, because she possessed a revolver, rifle, and shotgun.  (*Id*.)  Two levels were added under USSG §3B1.4, because Bennett used or attempted to use a minor in the offense.  (*Id*. at ¶ 39.)  Two levels were added for obstruction of justice under USSG § 3C1.1.  (*Id*. at 12-13, ¶ 40.)  The total offense level was 32.  (*Id*. at ¶ 44.)  With the offense level of 32 and a criminal history category of two, the resulting guideline range was 135-168 months' imprisonment.  (*Id*. at 23, ¶ 85.)  The statutory maximum sentence for Counts One, Three, and Five was 10 years, and the statutory maximum sentence for Count Two was 20 years.  (*Id*. at ¶ 84.)  Bennett received a sentence of 120 months' imprisonment each for Counts One, Three, and Five to be served concurrently, and 180 months' imprisonment for Count Two to be served concurrently with the sentences for Counts One, Three, and Five, for a total aggregate sentence of 180 month's imprisonment.  (Doc. 113.)

On appeal, the conviction for Count One was vacated, and the case was remanded for resentencing.  (Doc. 153); *Coppin*, 569 F. App'x 326.  She was then sentenced to 120 months' imprisonment each for Counts Three and Five to be served concurrently, and 180 months' imprisonment for Count Two to be served concurrently with the sentences for Counts Three and Five, for a total aggregate sentence of 180 month's imprisonment.

4

(Doc. 161.)

Bennett raises the following grounds in the motion to vacate:

(1) Counsel was ineffective for:

(a) failing to seek the dismissal of Count Two because it did not state an essential element of the offense;

(b) failing to seek the dismissal of Count Two because it charged two distinct offenses;

(c) failing to object to the mis-grouping of the counts under the sentencing guidelines;

(d) failing to object to the use of a cross-reference in the sentencing guidelines to determine the base offense level;

(e) failing to object to the loss amount calculation;

(f) failing to advise her that she could plead guilty and not cooperate with the government and still receive credit for an acceptance of responsibility;

(g) failing to object to the two-level increase under USSG § 3C1.1;

(h) failing to object to the constructive amendment of Count Two of the indictment when the Court gave the jury an instruction defining "corruptly" that effectively amended the indictment to include an offense under 18 U.S.C. § 1512(c)(2);

(2) Her right to due process was violated when she was resentenced without an opportunity to be heard.

(3:15-CV-3534-K (doc. 1 at 3-18.)

## II. SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal

and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. It guarantees a criminal

6

defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Id.* at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id*. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors.

*Strickland*, 466 U.S. at 695-96.

To show prejudice in the sentencing context, the Petitioner must demonstrate that the alleged deficiency of counsel created a reasonable probability that his or her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

A.      **Dismissal of Count Two**

Bennett contends that counsel should have sought the dismissal of Count Two for the same reasons the Fifth Circuit held that Count One was defective. Count One alleged that Bennett and co-defendant Coppin conspired to obstruct justice through evidence concealment, in violation of 18 U.S.C. §§ 1512(b)(2)(B), (k). Section 1512(b)(2)(B) has as an element that a defendant "corruptly persuade another person" to conceal evidence. The indictment did not allege that Bennett and Coppin conspired to corruptly persuade another person to conceal evidence, only that they conspired with

each other to conceal evidence. The jury instructions did not tell jurors that they must find that Bennett and Coppin conspired to persuade someone else to conceal evidence, so the omission in Count One was not harmless. The Fifth Circuit reversed the conviction for Count One. *Coppin*, 569 F. App'x at 332-33.

For Count Two, the Fifth Circuit observed that the indictment for Count Two closely followed the language of the statute, except that it omitted the word "corruptly." The Fifth Circuit reasoned:

> The instructions on Count Two required that jurors find the defendants corruptly violated the statute, and gave a proper definition as follows: "For a person to act 'corruptly,' they must have acted knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice." The instruction removed any possible harm from the grand jury's failure to include the word in the indictment.
>
> The only objection at trial to the adequacy of Count Two's language was that the word "corruptly" was omitted. That also was the only relevant objection to the instructions on Count Two, an addition which counsel argued was effectively a trial amendment. On appeal, both defendants remain focused solely on the fact that the word "corruptly" was not in the indictment.
>
> We agree with defense counsel that the indictment should have included the word "corruptly." Yet the error was harmless. Defendants have never argued that they were unaware that the relevant charge under Count Two was to Section 1512(c)(1). We conclude, then, that the indictment gave each defendant sufficient notice of the crime on which they would be tried. Other than arguing the instructions on Count Two improperly added the word "corruptly," which had been omitted from the indictment, defendants have no objection to the instructions on this count. The conviction under valid instructions creates a presumption that there was no harm arising from the failure of a grand jury to charge that missing element of the necessary intent.

9

> There was no effect on the substantial rights of the defendants because of the defects in Count Two of the indictment.

*Id*. at 334-35 (citations omitted).

The flaw with Count One was that it did not include an element that was necessary under that count, because it charged conspiracy to obstruct justice under § 1512(b)(2)(B), which was that the defendants conspired to "corruptly persuade another person" to conceal evidence. Although Count Two cited § 1512(b)(2)(B), it did not allege an offense under that provision. It alleged an offense under § 1512(c)(1), which made it an offense to conceal evidence. Under that section, the defendants did not need to have conspired to "corruptly persuade another person" to conceal evidence. Section 1512(c)(1) provides, "Whoever corruptly—(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding," is guilty of the offense. As the Fifth Circuit noted, counsel did object that Count Two did not include the word "corruptly." However, the word "corruptly" is used in § 1512(c)(1) (Count Two - "corruptly alters, destroys, mutilates, or conceals" evidence) in a different context than in § 1512(b)(2)(B) (Count One - "corruptly persuade another person" to conceal evidence). The Fifth Circuit held that the failure to include the word "corruptly" in Count Two of the indictment was harmless, because it was included in the jury instructions. Count Two did not suffer from the same deficiency as Count One, and counsel was not ineffective for failing to object on the same basis that Count One was

10

found to have been deficient.

B. **Count Two - Two Different Offenses**

Bennett contends that counsel failed to object to Count Two of the indictment on the basis that it alleged two different offenses – § 1512(b)(2)(B) and § 1512(c)(1). As the Fifth Circuit noted, although Count Two cited § 1512(b)(2)(B), the language of Count Two alleged an offense under § 1512(c)(1). The Fifth Circuit has explained:

> Rule 7(c)(3) of the Federal Rules of Criminal Procedure provides: "Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction." *See, e.g.*, *United States v. Boyett*, 923 F.2d 378, 378-79 n. 1 (5th Cir. 1991) (conviction not reversed where indictment cited incorrect statute, because "[t]he error was not one that could have reasonably misled the defendant to his prejudice"); *Schmidt v. United States*, 286 F.2d 11, 12 (5th Cir. 1961) (finding that judgment could not be vacated simply because the indictment referred to the wrong subsection of the offense statute where "[a]ppellant was represented by counsel and the indictment adequately and positively alleged facts constituting a crime under the offense statute .... Under these circumstances it is highly doubtful that [defendant] was misled at all.")

*United States v. Castro-Trevino*, 464 F.3d 536, 545 (5th Cir. 2006). Bennett has not shown that she was prejudiced by the inclusion of the citation to § 1512(b)(2)(B) in Count Two of the indictment, and she has not shown deficient performance of prejudice for counsel's failure to object on that basis.

C. **Grouping of Offenses under Sentencing Guidelines**

Bennett contends that counsel failed to object to the misapplication of USSG § 2J1.2(c)(1), which led to the misapplication of USSG § 3C1.1.

The PSR stated:

> USSG §3D 1.1 provides instructions explaining when the defendant has been convicted of more than one count, the Court shall group the counts resulting in conviction into distinct Groups of Closely Related Counts (Groups) by applying the rules specified in USSG §3D1.2. Because the defendant was convicted of three obstruction offenses and an underlying offense, the counts for the obstruction offenses will be grouped with the count for the underlying offense under USSG §3D1.2(c). USSG §3Cl.l, comment (n.8). Thus, the counts are grouped together under USSG §2K2.1.

(Doc. 97-1 at 11, ¶ 34.) Bennett contends that the obstruction counts should not have been grouped with her firearm count, because she was charged with obstruction of justice regarding Coppin's possession of a firearm.

As the Government argues, grouping could have been proper under § 3D1.2(b), because Bennett's counts "involve[d] the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." The "victim" can be a harmed "societal interest." USSG § 3D1.2(b) comment n.2. Bennett and her co-defendant's common criminal objective was to keep evidence of their robbery scheme and their unlawful possession of firearms hidden from authorities, and it involved two or more acts or transactions connected to that objective. Because grouping could have been proper under § 3D1.2(b), Bennett has not shown that counsel's performance was deficient or that she was prejudiced by counsel's lack of an objection to the grouping.

Regarding the two-level increase under § 3C1.1 for obstruction of justice, that

increase could have been proper regarding her firearm count, regardless of whether the counts were grouped. After authorities unsuccessfully searched Bennett's yard for buried firearms and jewelry, she moved the firearms and jewelry into her residence. (Doc. 97-1 at 7-8, ¶¶ 19-20.) She has not shown that counsel was ineffective for failing to object to the two-level increase under § 3C1.1 for obstruction of justice.

Moreover, even if counsel successfully objected to the mis-grouping, there would have been one guideline range for the firearm count and one guideline range for the grouped obstruction counts. However, the Court varied from the guideline range calculated in the PSR and sentenced Bennett to the statutory maximum for sentence on Counts Three and Five and an above-guidelines sentence of 180 months' imprisonment for Count Two. She has not shown that her sentence would have been different had counsel objected to the grouping.

D.  **Cross-reference in Sentencing Guidelines**

Bennett contends that counsel failed to object to the cross-reference in determining the base offense level. The PSR determined that Bennett used or possessed the firearm in her firearm count in connection with the commission of distribution of a controlled substance. The base offense level for the drug offense served as the base offense level for the firearm count under USSG §§ 2K2.1(c)(1)(A), 2X1.1. Section 2D1.1, which applies to the offense of distribution of a controlled substance, was used to determine the base offense level. Bennett contends that there was no "functional

nexus" between the possession of the firearm and the distribution of the controlled substance.

Counsel did object to the use of distribution of a controlled substance in determining the base offense level, but the objection was overruled. (Doc. 103-1 at 1-2; doc. 150 at 14.) The drug offense was used to determine the base offense level of the firearm count, because the firearm "had the potential of facilitating" Bennett's illegal drug distribution. *See* USSG § 2K2.1 comment. n. 14(A). An objection on that basis lacked merit. Bennett has not shown that counsel was ineffective on that basis.

E.  **Restitution Amount**

Bennett contends that counsel failed to object to the $63,850 in restitution, because all or most of the stolen jewelry was recovered. The PSR stated that the loss amount of $63,850 that was listed in the police reports should be used for restitution purposes absent other evidence of the amount of the loss. (Doc. 97-1 at 10, ¶ 28.)

Bennett does not show that all or most of the stolen jewelry was recovered, and she does not show that $63,850 was not the amount lost by the owner of the jewelry. *See United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) ("When faced with facts contained in the PSR that are supported by an adequate evidentiary basis with sufficient indicia of reliability, a defendant must offer rebuttal evidence demonstrating that those facts are materially untrue, inaccurate or unreliable."); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas

14

petitioner's bald assertions on a critical issue in his pro se petition . . . to be of probative evidentiary value.").

Bennett also asserts that if the obstruction counts would have been grouped separately, the loss amount would have affected the offense level. However, those counts were not grouped separately, and the loss amount did not factor into the calculation of the sentencing guidelines.

Bennett has not shown that there was a sound basis for counsel to object to the amount of restitution.

**F.     Acceptance of Responsibility**

Bennett contends that counsel failed to advise her that she could have pled guilty, not cooperated with the Government, and still received a reduction in offense level for acceptance of responsibility.

A movant is entitled to an evidentiary hearing on her § 2255 motion only if she presents "independent indicia of the likely merit of [his] allegations." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013). "[B]are, conclusory allegations unsupported by other indicia of reliability in the record, do not compel a federal district court to hold an evidentiary hearing." *Ross v. Estelle*, 694 F.2d 1008, 1012 n. 2 (5th Cir. 1983); *accord United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (noting that "[i]f the defendant produces independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties, she is entitled to an

evidentiary hearing on the issue"); *United States v. Auten*, 632 F.2d 478, 480 (5th Cir. 1980) (noting that mere conclusory allegations are not sufficient to support a request for an evidentiary hearing).

Bennett does not provide any independent indicia of the likely merit of her claim. She has not alleged the substance of the discussions she had with counsel about pleading guilty, and she does not allege that she indicated to counsel any interest in pleading guilty.

Moreover, she has not shown that she would have been eligible for a reduction in offense level based on acceptance of responsibility. Conduct that results in an enhancement under § 3C1.1 for obstructing justice ordinarily indicates that a defendant has not accepted responsibility for her criminal conduct. USSG § 3E1.1 comment. n.4. There was no certainty that she would have received credit for acceptance of responsibility, and she has not shown that she would have pled guilty under those circumstances. Additionally, she has not shown that her sentence would have been different, in light of the Court's variance from the sentencing guideline range. She has not shown deficient performance or prejudice in this claim.

## G. Amendment of Indictment

Bennett contends that counsel failed to object that Count Two of the indictment was constructively amended by adding the word "corruptly" to the jury instructions. She asserts that the indictment charged a violation of § 1512(c)(1), but the addition of
16

the word and definition of "corruptly" to the jury instructions tracked the language of § 1512(c)(2), but she does not explain how. As the Fifth Circuit held, the Court gave a proper jury instruction and definition of "corruptly" regarding Count Two. *Coppin*, 569 F. App'x at 334. Bennett has not shown that counsel was ineffective under this claim.

## IV. RESENTENCING

Bennett contends that her rights to due process were violated when she was resentenced without the opportunity to be heard. This claim is procedurally barred, because it is a claim that could have been raised on appeal and she has not shown cause and prejudice for failing to raise it on appeal. *See Shaid*, 937 F.3d at 232. Additionally, the Fifth Circuit held that "[a] new sentencing hearing is not required unless ordered by the district court, as each defendant received concurrent sentences on Counts One and Two, and their sentences for Count Two were either identical to or longer than their sentences for Count One." *Coppin*, 569 F. App'x at 339. Bennett has not shown that she is entitled to relief on this claim.

## V. CONCLUSION

For the foregoing reasons, the § 2255 motion is DENIED with prejudice.

SO ORDERED.

Signed February 28th, 2018.

*Ed Kinkeade*
_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE